UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD MAXIMUS STRAHAN ) | |
| ) | |
| *Plaintiff* ) | |
| ) | Civil Action No. |
| v. ) | _____ |
| ) | |
| DONALD BAYNARD ) | |
| ) | |
| THE UNIVERSITY OF MASSACHUSETTS ) | 12 September 2018 |
| ) | |
| PAUL PARLON ) | |
| ) | |
| KATHERINE NEWMAN, in her official capacity as acting ) | |
| chancellor of UNIVERSITY OF MASSACHUSETTS ) | |
| IN BOSTON ) | |
| ) | |
| *Defendants* ) | |

VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE,
AND OTHER RELIEF AND A REQUEST FOR A JURY TRIAL

I the Plaintiff — Richard Maximus Strahan — SPEAKS:

1.      Plaintiff Strahan is bringing this civil rights action AGAINST the individual Defendants who are currently acting in concert to stop him from receiving academic services at the University of Massachusetts in Boston ("UMB") and additionally are unlawfully coercing him from entering onto UMB property using unlawful threats of trespass arrest pursuant to the Massachusetts Criminal Trespass Statute ("MCTS"). **FN1** The Plaintiff's civil rights and other

---

[1] **Massachusetts Criminal Trespass Statute**, GL Ch. 266 § 120: "Section 120. Whoever, WITHOUT RIGHT [emphasis added] enters or remains ... in or upon ... buildings ... or improved or enclosed land ... of another ... after having been forbidden so to do by the person who HAS LAWFUL CONTROL of said premises ... shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine and imprisonment."

claims against these Defendants are rooted in their historical practice of retaliation against him for being a political activist, for having sued government employees in the past, and to stop him from receiving any further academic services from UMB as they consider the Plaintiff to be a threat to their personal vested interests. Additionally the Plaintiff is bringing a related tort claim against UMB itself under the Court's supplementary jurisdiction for its breaching its contract with the Plaintiff to supply him a Bachelor of Science Degree.

2.    Defendants Baynard and Parlon ("UMB Employee Defendants") are deputized security employees of UMB. These Defendants as state actors are maliciously and ruthlessly engaging in a historical, personal vendetta – beyond their lawful authority as UMB employees — to injure and stop Strahan from receiving any further academic services from the University of Massachusetts in Boston ("UMB") and to keep him off the UMB campus no matter what laws they need to violate in order to do so. They are deliberately acting to stop and/or interfere with the Plaintiff from engaging in constitutionally protected acts such as suing UMB employees, engaging in Ballot Petitioning on UMB property and organizing UMB students in order to enforce their contractual rights with UMB. The UMB Employee Defendants are violating the constitutionally protected rights of the Plaintiff to petition the Courts, to engage in core protected political speech on the UMB campus, to be free from a hostile academic environment, to do ballot petition on UMB property, to have equal access under law to academic services and UMB facilities as enjoyed by the Public and to be free from unlawful seizure of his person and property pursuant to arrests without probable cause by them and their agents.

3.    Strahan is bringing civil rights claims against Defendants Katherine Newman in her official capacity as the executive administrator of UMB. The Chancellor's Office at UMB is negligently allowing UMB employees to create a permanent hostile environment for the Plaintiff

at UMB. This UMB is negligently tolerating the UMB Employee Defendants stopping him from entering onto the UMB campus because of their threat to arrest him for trespass. UMB Chancellor is negligently letting UMB employees to refuse the Plaintiff any further academic services from UMB despite his breaking no law, having graduate *magnum cum laude* from UMB, and his being an alumnus and a member of UMB alumni association. The UMB chancellor's office has negligently refused to investigate any of Strahan's pleas over the years to help him and protect him from the lawless attacks of the UMB Employee Defendants and their affiliates.

    4.    The UMB Employee Defendants have no authority under law to trespass anyone from entering onto the UMB campus. A trespass arrest made pursuant to the Massachusetts Criminal Trespass Statute of a member of the Public who ignores these Defendants threat of trespass arrest to stay off UMB property is categorically devoid of the requisite probable cause to legally justify the trespass arrest.

    5.    Upon information and belief the UMB Chancellor has never delegated to the UMB Employee Defendants any authority to ban on their own volition a member of the Public from entering onto UMB property either permanently or for a specific interval of dates. Additionally Defendant Newman is allowing UMB to violate the Plaintiff's due process rights and equal treatment under the law by refusing to: 1) Entertain any complaint from him against the UMB Employees for their manifesting a hostile academic environment for him at UMB and 2) Appeal the legitimacy of the UMB Employees Defendants July 2016 threat to arrest the Plaintiff for trespass if he enters again onto UMB property.

    6.    The Plaintiff is seeking both compensatory and punitive damages against each of these Defendants. He is also seeking a declaratory judgment and prospective injunctive relief

against the Defendants to protect the Plaintiff from future irreparable injury at the hands of these same Defendants.

7.   The Plaintiff is seeking a Jury Trial on all his claims against these Defendants.

### The Parties

8.   Plaintiff Richard Maximus Strahan is a degree seeking candidate at the University of Massachusetts at Boston MA. He is the Chief Science Officer of Whale Safe USA, a campaign to make the US coastline environmentally safe for endangered species of coastal whales and sea turtles. His business mailing address is POB 82 Peterborough NH 03458.

9.   Defendant Paul Parlon is employed by the University of Massachusetts in Boston MA as a deputized state actor. He is being sued in his individual capacity. His business address is % University of Massachusetts in Boston, 100 Morrissey Boulevard, Boston MA 02125.

10.  Defendants Donald Baynard He is currently employed by UMS as a deputized security guard. He is being sued in his individual capacity. His business address is % University of Massachusetts in Boston, 100 Morrissey Boulevard, Boston MA 02125.

11.  Defendant UMB is an independent business affiliate of the University of Massachusetts. The business address of Defendant UMB is % Office of the Chancellor, University of Massachusetts in Boston, 100 Morrissey Boulevard, Boston MA 02125.

12.  Defendant Katherine Newman is being sued in her official capacity as the acting Chancellor of the University of Massachusetts in Boston. Her business address is % University of Massachusetts in Boston, 100 Morrissey Boulevard, Boston MA 02125.

## Jurisdiction and Standing

13.     The Court has jurisdiction to hear the Plaintiff's petition pursuant to the Civil Rights Act and other federal law. **FN2** The Plaintiff is also entitled a request for a declaratory judgment pursuant to the Declaratory Judgment Act. **FN3**

14.     The **Civil Rights Act** gives the Court jurisdiction to hear the Plaintiff's claims that the Defendants violated the Plaintiff's 4th Amendment right to be free from unlawful seizure and guarantees his right to due process. The UMB Employee Defendants are all state actors who acted under color of state law to deprive the Plaintiff of his 4th Amendment constitutional right to be protected in his property and person from seizure without a warrant. **FN4**

15.     The **Federal Declaratory Judgment Act** provides the Plaintiff the the lawful right to seek a declaratory judgment from the Court to establish that rights and duties between the parties and in regards to the issues before the Court. **FN5**

16.     The **Massachusetts Declaratory Judgment Act** provides the Plaintiff an independent cause of action to seek a declaratory judgment from the Court. **FN6.**

17.     The Court has jurisdiction over the subject matter of this action by virtue of

---

[2] See 42 USC § 1983

[3] See 28 U.S.C. §§ 2201-2202.

[4] 42 USC § 1983

[5] Declaratory Judgment Act, 28 U.S.C.S. § 2201

[6] GL Ch. 231A § 1: "The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen and is specifically set forth in the pleadings and whether any consequential judgment or relief is or could be claimed at law or in equity or not; and such proceeding shall not be open to objection on the ground that a merely declaratory judgment or decree is sought thereby and such declaration, when made, shall have the force and effect of a final judgment or decree and be reviewable as such; provided ..."

Massachusetts **Civil Rights Act** ("MCRA") **FN7** provides the Plaintiff **jurisdiction** to personally seek injunctive relief from Court to enjoin the Defendants from further threatening him in order to coerce him from enjoying his protected civil rights. The MCRA authorizes the Plaintiff to seek prospective injunctive relief against the Defendants to prevent the reoccurrence of their violations of the MCRA by using threats of intimidation to coerce the Plaintiff from enjoying his rights under both the Constitution and the Massachusetts Constitution.

19.     The Plaintiff has previously served a claim for tortious injuries on the Defendant UMB pursuant to the Massachusetts Tort Claims Act for its negligence in allowing the Plaintiff to be injured by the UMB Employee Defendants tortious injuries against the Plaintiff. After one year the Defendant UMB failed to provide any response to the Plaintiff. **FN8**

20.     The Plaintiff has standing under Article III of the Constitution to bring the instant action. The Plaintiff has suffered substantive monetary loss and irreparable injury to his business interests as a result of the harassment and arrest by the Defendants.

---

[7] GL Ch. 12 § 11I: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court."

[8] Massachusetts Tort Claims Act at GL Ch. 258 § 4.

## Brief Background for Strahan's Complaints Against the Defendants

21.     In September 2011, Strahan entered into a contractual relationship with UMB to provide him a Bachelor of Science Degree by January 2014. The Plaintiff was not allowed to obtain his sought for BS Degree from UMB — because of the hostile academic environment that was created at UMB by the UMB Employee Defendants and its associates, the unlawful interference by other state employees affiliated with UMB, and UMB's own breaching of its contract with the Plaintiff. Instead, the Plaintiff graduated *magnum cum laude* from UMB in August 2016 with a Bachelor of Arts Degree in Classic Studies.

22.     From September 2011 through August 2016, the Plaintiff complied faithfully with all existing state, federal and municipal laws associated with his matriculation at UMB. At no time during this era did UMB make any determination that the Plaintiff violate any of its policies or terms of its contractual agreement with it. The Plaintiff fully paid all required tuition and fees to UMB owed to it under his contractual relationship to it. The Plaintiff was willing to take any course required to obtain his sought for BS Degree. At no point during this era, was the Plaintiff lawfully accused of violating any federal, state or municipal law. At no point did UMB lawfully find the Plaintiff in violation of its student conduct code. Upon information and belief, all members of UMB faculty and the Public matriculating at UMB who interacted with the Plaintiff raised no complaints against him and universally found him to be a delight and welcomed mber of the UMB academic community.

23.     The Plaintiff during his UMB Matriculation, was routinely harassed and attacked by the UMB Employee Defendants and their affiliated UMB employees. For example, Defendant Parlon routinely acted outside his lawful authority as a deputized UMB employee to threaten the Plaintiff with trespass arrest and on several occasions to physically remove him from UMB

buildings and classrooms in which he was contractually allowed to use as part of his UMB Matriculation. For his part, Defendant Baynard on many occasions personally threatened to arrest the Plaintiff for criminal trespass in order to coerce him not to be on the UMB campus. For example, during the first week of classes at UMB for the 2014 fall semester, Baynard personally acted to keep the Plaintiff off the UMB campus despite Strahan being a enrolled student who had already paid his full tuition and fees for that semester. As a result the Plaintiff missed a week of classes and his reputation has adversely affected amongst UMB employees.

24.     In July 2016, Defendant Baynard sent an e-mail message to the Plaintiff threatening to arrest him for criminal trespass pursuant to GL Ch 266 § 120 ("2016 Trespass Threat"). This message provided no statutory or otherwise lawful authorization that Baynard had to issue a trespass "notice" on behalf of UMB. The Plaintiff has since asked the UMB Chancellor several times to repudiate the 2016 Trespass Threat and otherwise provide him a hearing — including one under the Massachusetts Administrative Procedures Act — so that he may challenge the legitimacy of the 2016 Trespass Threat. The UMB Chancellor has negligently failed to process the Plaintiff's request for said administrative review.

25.     After graduating from UMB, the Plaintiff applied on two separate occasions to receive routine academic services to obtain 30 course credits in exchange for a specified amount of tuition and fee payment. The Plaintiff sought in doing so to obtain a Bachelor of Science Degree in Mathematics and/or Computer Science. He sought to obtain a BS Degree from UMB in order to be able to obtain technology oriented employment, which was his original intent at matriculating at UMB. The BA Degree he previously obtained he discovered could not be used to obtain employment in any "liberal arts" field where an employee could make more than $40,000 a year. On both occasions his petition for routine admission to get a BS Degree was

summarily denied. He was told by UMB admission employees that as long as Baynard did not want the him on UMB property, he would be refused any further academic services by UMB.

    26.    In 2016, the Massachusetts Secretary of State certified the Plaintiff's Whale Safe Fishing Act as a valid initiative petition and issued to him official ballot sheets for registered voters to sign in support of the Whale Safe Fishing Act being paced on the 2018 Massachusetts election ballot for its approval as a state law by the voters. The Plaintiff directly notified UMB in writing that he wanted to collect signatures of registered voters on the WSFA Ballot Sheets in order to place the WSFA on the 2018 state-wide election ballot. The UMB Chancellor's office failed to agree that he could so. After he directly told Baynard on the phone that he wanted to collect signatures in Public areas of UMB campus on the WSUSA Ballot Sheets, Baynard told him that he waould be arrested for trespass if the Plaintiff entered upon UMB property to collect signatures on the WSFA Ballot Sheets. As a result the Plaintiff was coerced by Baynard arrest threats from collecting signatures of registered voters of the WSFA Ballot Sheets as he wanted and intended to do.

    27.    In September 2018, the Massachusetts Secretary of State has certified a new version of the Whale Safe Fishing Act to as legally certified to be a valid initiative petition to be placed on the 2020 state wide election ballot to be approved by voters as a state law of Massachusetts. It will issue the Plaintiff ballot sheets ("WSFA Ballot Sheets") to be signed by registered voters to be placed on the 2020 state-wide election ballot. If the Plaintiff and/or others obtains the required 60,000 signatures of registered Massachusetts voters on the WSFA Ballot Sheets it will qualify to be placed on the 202o state-wide election ballot for the approval of voters for the WSFA to become a state law. Because of the UMB Employee Defendants are still intent on making good on their 2016 Trespass Threat, the Plaintiff expects that he will be

unlawfully arrested by the UMB Defendants for trespass when he goes onto the UMB Campus to collect signatures on the WSFA Ballot Sheets this fall.

28. The Plaintiff currently has about $80,000 in student loan debt to the US Department of Education. The USDE expects him to pay it more than $600 a month in order to pay off his debt to them. He paid UMB money pursuant to his contract to it to obtain a BS Degree for one purpose. So that he would qualify to enroll in graduate school to get a PhD in either Physics or Mathematics. Because UMB breached his contract with it, the Plaintiff has lost any opportunity to enroll in graduate school to obtain a PhD in any scientific career path. He has lost almost a million dollars in lost wages because of UMB's breach of their contract and the unlawful antics of the UMB Employee Defendants.

### Strahan's Claims Against the Defendants

COUNT I:     *The UMB Employee Defendants' Violation of 42 USC § 1983: Their Violation of My 1st Amendment Right to Video Record the Police in Public Places and to Petition the Courts for Relief Against his Grievances Against UMB employees.*

29. The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 28.

30. The Plaintiff has attempted to video record the UMB Employee Defendants and their fellow employees at UMB and has sued UMB employees in the past for violating his civil rights. The First Circuit has ruled that the First Amendment protects the right of the Public to video record the police in public spaces performing their duties. FN9 The UMB Employee Defendants hate him for doing so. In revenge for his attempts to video record them and his suing UMB employees — and out of fear and expectation that he will sue them and their affiliates in the future — the UMB Employee Defendants issued the 2016 Trespass Threat against him. They are violating his 1st Amendment right to video record them as cops in Public places. They are

---

[9] *Glik v. Cunnifee*, 655 F.3d 78 (1st Cir. 2011)

also infringing on his right to Petition the courts by their said retaliation against them for doing so in the past and because of his intent to do so in the future.

31.     The Plaintiff is seeking a permanent injunction against these UMB Employee Defendants to enjoin their arresting him for trespass simply for entering onto the UMB Campus against their demand that he not do so. The Plaintiff is also seeking an order form the Court to stop the UMB Employee Defendants from interfering with his peaceful attempts in the future to video record them in Public places performing their official duties.

COUNT II:   *The UMB Employee Defendants Violation of 42 USC § 1983 and the Plaintiff's Rights Protected by the 1st and 4th Amendments to Engage in Core Protected Speech on the UMB Campus including His Ballot Petitioning that is Authorized and Protected Under Articles 9 and 48 of the Massachusetts Constitution.*

32.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 31.

33.     The UMB Employee Defendants are now acting in concert to discriminate against Strahan from being on the UMB campus under the same conditions enjoyed by any other UMB alumnus. Strahan has never violated any state, federal or municipal criminal law while on UMB property nor in regards to any UMB employee or any of the Public frequenting the UMB campus. He has always had a positive relationship with faculty and students. He has never unfairly interfered with any other students contractual relationship with UMB.

34.     In July 2016, the UMB Employee Defendants acting in concert commenced maliciously threatening Strahan with criminal trespass arrest if he entered upon the UMB campus in the future. In June 2016 agents for Baynard physically grabbed him and then physically removed him from the UMB campus. They never pursued any prosecution of Strahan based on his alleged conduct from that date. In July 2016, Defendant Baynard emailed Strahan a written threat that he would arrest the Plaintiff for criminal trespass under the MCTS if he entered upon UMB property in the future. In this message Baynard failed to provide any

authority for it's being able to threaten him with the any lawful trespass arrest. Upon information and belief Baynard has no lawful authority as a UMB employee to permanently ban\ anyone from entering upon UMB property or to arrest said person for entering upon UMB property under the MCTS after he commanded them not to do so.

35.    The UMB Defendants and Baynard are maliciously using threats of trespass arrest to keep the Plaintiff off the UMB campus to deliberately stop him from engaging in core political speech as part of his attempts to organize the students and staff at the UMB campus into an advocacy group for students that will enforce the contractual rights and interests in students obtaining academic certification and services from UMB.

36.    The Plaintiff wants to come onto UMB campus to collect signatures from registered voters on WSFA Ballot Petition (i.e. to do "Ballot Petitioning") in both the Fall of 2018 and 2019 to place the Whale Safe Fishing Act on the Massachusetts state-wide election ballot for 2020. The UMB Employee Defendants are threatening the Plaintiff with an unlawful trespass arrest if he enters upon UMB campus to peacefully conduct Ballot Petitioning for the Whale Safe Fishing Act. The Massachusetts Constitution provides Strahan and the Public with the authority and not just right to Ballot Petitioning on Public spaces on private property. **FN10** Because of the UMB Employee Defendants threats to arrest the Plaintiff for trespass on UMB property if he engaged in Ballot Petitioning anywhere on it, the Plaintiff is being is threatened with a denial of his 4th amendment protected right from unlawful seizure. The UMB Employee Defendants are in continuous violation of 42 USC § 1983 for interfering with the Plaintiff's

---

[10] *Batchelder v; Allied Stores International*, 388 Mass. 83, 445 N.E.2d 590 (Mass. 1983) and *Glovsky v. Roche Bros. Supermarkets Inc.*, 469 Mass. 752, NE2d (Mass. 2014)

protected rights under the 4th Amendmen's protection by their use of these threats of unlawful trespass arrests and resultant malicious prosecutions. **FN11**

37. Because the Strahan and the Public have the authority and right under the Massachusetts Constitution to be on UMB property to do Ballot Petitioning, the UMB Employee Defendants intent to arrest the Plaintiff under the MCTS while doing Ballot Petitioning on UMB property is facially devoid of the requisite probable cause to justify such an arrest. This is also true regardless if Strahan had been trespassed from the property previously for some other allegedly lawful reason. His constitutional authority and right to do Ballot Petitioning means that he can lawfully enter on property otherwise barred to hem for the explicit purpose of doing Ballot Petitioning.

38. The UMB Defendants will continue to threaten and coerce the Plaintiff with unlawful trespass arrests — and make good on their threats by arresting him — if he enters upon UMB property unless enjoined by the Court from doing so in the future.

COUNT III: *The Defendants Violation of the Civil Rights Act: Their Violation of My 4th and 14th Amendments Protected By Their Having No Lawful Authority Under the MCTS to Arrest the Plaintiff for Peacefully Entering upon UMB property in the Future as All Other Members of the Public are Entitled to Do.*

39. The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 38.

40. UMB allows the Public unfettered access to Public space on its campus 24/7 without any need to get permission from it to do so. The UMB Chancellor has never authorized and/or designated any UMB employee outside the Chancellor's office to ban on their own volition any member of the Public from all UMB property. The UMB Employee Defendants

---

[11] *Strahan v. Frazier*, 156 F.Supp.2d 80 (D. Mass. 2001)

have no lawful authority to threaten the Plaintiff with any trespass arrest if he enters upon UMB campus like any other member of the Public.

41.    The UMB Employee Defendants are currently in continuing violation of the Civil Rights Act and the 4th Amendment's protection of the Plaintiff right to be free from unlawful seizure and/or arrest for criminal trespass on the UMB campus if he flaunted their 2016 Trespass Threat since any subsequent trespass arrest done by the UMB Employee Defendants would be unlawful as devoid of the requisite probable cause to justify the arrest — owing to their having no lawful authority to ban anyone from UMB property simply on their own volition.

42.    The Plaintiff plans to ignore the threats of the UMB Defendants and enter upon UMB property in the immediate future to conduct official business with UMB employees. This includes visiting UMB faculty to advocate for his being admitted to graduate school at UMB and to obtain their referrals to be accepted into graduate school at other accredited universities. The Plaintiff believes that the UMB Defendants will make good on their threats to unlawfully arrest him for criminal trespass if he peacefully enters upon UMB property in the future to conduct official business with UMB employees.

43.    The Defendant Newman is violating the Civil Rights Act and the 14th Amendment's protection of the Plaintiff's right to equal protection under the law and to due process. Despite her being aware of the UMB Employee Defendants' intent to arrest the Plaintiff for trespass if he enters upon the UMB campus in the future like any other member of the Public (i. e. violation of equal right under the law) she also refuses his request for a hearing and administrative review of the UMB Employee Defendants' said unlawful threat to arrest him for trespass as established in the 2016 Trespass Threat document. The latter violates his right to due

process and the Massachusetts Administrative Procedures Act provisions that provide him an appeal of any adjudicatory proceeding against him by state employees.

44.     The Defendants will continue to threaten and coerce the Plaintiff with unlawful trespass arrests — and make good on their threats by arresting him — if he enters upon UMB property unless enjoined by the Court from doing so in the future.

### Claims Brought Under the Court's Supplemental Jurisdiction.

COUNT IV:   *Defendant UMB's Breach of its Contract with the Plaintiff*

45.     The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 44.

46.     In September 2011, the Plaintiff entered into a contract ("Contract") with Defendant UMB for it to supply him academic services in order for it to award him a Bachelor of Science Degree in Physics or Mathematics ("BS Degree"). The terms of the Contract were that: (1) Strahan would pay UMB about $100,000 in tuition and fees in semester by semester installments; (2) Strahan will accumulate at least 120 course credits in required academic courses; (3) Strahan will comply with the requirements of academic honesty in his coursework; (4) Strahan will earn a Grade Point Average of at least 3.0 in his coursework: (5) In exchange for his compliance with 1-4, UMB will provide the Plaintiff a BS Degree. Additionally once Strahan graduated from UMB, he would become a permanent Alumnus of UMB who would be welcomed on campus at all times and afforded the opportunity to exploit the available services to him by UMB as an Alumnus, including continued professional association with willing members of the faculty and student body.

47.     Strahan fully complied with his requirements under the terms of the Contract. The Defendant UMB breached its requirements under the terms of the Contract. It negligently allowed the UMB Employee Defendants and other disgruntled employees to act outside their authority as UNB employees to unlawfully terminate academic and other services by UMB to the Plaintiff in an arbitrary and capricious manner. It also negligently allowed these said disgruntled

employees to create a hostile environment for Strahan at UMB in violation of the Contract. Eventually the Plaintiff's has prevented from taking required courses at UMB by the UMB Employee Defendants and their affiliated UMB employees. As a consequence the Plaintiff was forced to take any available courses that would allow him to graduate before his eligibility for student financial aid ran out. As a result the Plaintiff was only able to graduate with a Bachelor of Arts Degree in Classic Studies. UMB breeched the Contract with the Plaintiff as a result of these negligent failures and other fraudulent acts

48.   Defendant UMB negligently allowed its said disgruntled employees to interfere with the Plaintiff's enjoying his contractual right to obtain a Bachelor's degree in Physics and/or mathematics. Instead its supervisory negligence coerced the Plaintiff against his will to obtain a Bachelor's degree in an unwanted discipline. The Plaintiff paid Defendant UMB almost $80,000 in tuition and fees to get a BS Degree, Instead he only could get a BA Degree that is useless to the Plaintiff to pursue his intended graduate studies and sought for professional employment.

49.   The Defendant UMB is also breaching the Contract by refusing to provide him the Contract's required alumni services to the Plaintiff. The Plaintiff graduated magnum cum laude from UMB. He is now an official member of the official UMB Alumni Association. Yet he is now being denied all further academic services by UMB and denied access to the UMB campus by its disgruntled employees. All of this or more constitutes an impermissible breach by UMB of the Contract. As a result of the said breaches of the Contract by UMB, the Plaintiff is experiencing ongoing tortious injury, including but not exclusively, loss of income, debt and a failure of required professional recognition in his chosen fields of endeavor.

50.   Additionally UMB is breeching the Contract with the Plaintiff by currently refusing to allow the Plaintiff to apply for graduate school at UMB, his seeking a second

Bachelor's degree at UMB, or otherwise taking any continuing education courses as any other member of the Public is entitled to do, which are opportunities to the Plaintiff provided under the terms of the Contract.

COUNT V:   *The UMB Employee Defendants Malicious Interference with Plaintiff's Contractual Relations with UMB*

51.   The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 50.

52.   The UMB Employee Defendants engaged in tortious actions starting in 2011 and continuing to the present time that constitute a malicious interference on their part with the contractual relationship between the Plaintiff and UMB as established in the Contract and by other lawful agreements. These defendants are doing so as private actors outside any possible authority granted to them pursuant to their employment by UMB. These UMB Defendants maliciously created a hostile environment for the Plaintiff at UMB starting in 2011 as outlined *supra* that directly resulted in his not being able to obtain his sought for academic degree from UMB. The UMB Employee Defendants are now unlawfully preventing him from obtaining his contractually provided Alumni services from UMB. Additionally the Plaintiff is currently being prevented by these same Defendants from applying for graduate school at UMB, his seeking a second Bachelor's degree at UMB, or otherwise taking any continuing education courses as any other member of the Public is entitled to do, which are opportunities to the Plaintiff provided under the terms of the Contract.

COUNT VI:   *UMB Employee Defendants Intentional Infliction of Emotional Stress*

53.   The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 52.

54. The Plaintiff significant and crippling emotional stress from the Defendants' ongoing harassment, said threats of criminal arrest if he comes onto the UMB campus, estrangement from his professional relationships on the UMB campus, his lack of employment, and prevent of his obtaining further academic services at UMB.

COUNT VII: *The Defendants Violation of the Massachusetts Civil Rights Act*

55. The Plaintiff re-alleges his claims of fact and law asserted in paragraphs 1 – 67.

56. The UMB Employee Defendants 2016 Trespass Threat as an unlawful threat to intimidate and coerce him from his right to video record them and other UMB employees, his right to engage in Political activity on UMB property , and his right to prosecute bad cops in state and federal courts, and his right to engage in peaceful Ballot Petition on UMB campus.

57. The Employee Defendants will continue to use said threats of unlawful arrest in the future to intimidate the Plaintiff to coerce out of his enjoyment of his said protected rights under law unless finally enjoined by the Court not to do so.

## PRAYER FOR RELIEF

I. For a Declaratory Judgment that no UMB Defendant Employees have no lawful authority on their own volition to permanently ban a member of the Public from entering upon UMB property generally accessible to all other member of the Public.

II. For a Declaratory Judgment, that the Plaintiff has a continuing right to apply for and fairly obtain academic services from the UMB like any other member of the Public and as an UMB Alumni.

III. For an order enjoining the UMB Employee Defendants and their agents, from interfering with the Plaintiff's peacefully entering upon the UMB campus in the future to do Ballot Petitioning to get his access to the state-wide election ballot for initiative petitions and his candidacy for elective office.

IV. For an order enjoining the UMB Employee Defendants and their agents from interfering with the Plaintiff's video recording them performing their official duties in a Public space.

V. For an award of $100,000 in compensatory damages from each of the UMB Employee Defendants and $1000,000.00 from UMB.

VI. For an award of $1,000,000 in punitive damages from each of the Defendants sued in their individual capacity.

VII. For an award of the Plaintiff's direct costs of his prosecution against the Defendants.

VIII. For any further relief that the Court deems appropriate.

BY:

/s/ Richard Maximus Strahan

Richard Maximus Strahan
esistoo@yahoo.com
617-817-4402

*Pro Se and Proud!*

## VERIFICATION OF THE COMPLAINT

I Richard Maximus Strahan verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be true. Signed under the pains and penalties of perjury this 12th day of September in the year 2018.

/s/ Richard Max Strahan

Richard Maximus Strahan